**In re Fred F. SOMMA, M.D., Debtor.**

**Fred F. SOMMA, M.D., et al., Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

Bankruptcy No. 585–648.
Adv. No. 590–0040.

United States Bankruptcy Court, N.D. Ohio.

July 22, 1992.

Frederick M. Lombardi and Robert L. Tucker, Akron, Ohio, for plaintiffs.

Michael J. Moran, Cuyahoga Falls, Ohio and Henry J. Riordan, U.S. Dept. of Justice, Washington, D.C., for defendants.

Harold Corzin, trustee, Akron, Ohio.

FINDING

HAROLD F. WHITE, Bankruptcy Judge.

This matter came on for trial on July 15, 1991 on the Second Amended and Supplemental Complaint filed by the debtor, Fred F. Somma, M.D., and his non-debtor spouse, Sara Jane Somma, against the United States of America, Internal Revenue Service, the United States Attorney and Harold Corzin, the Chapter 7 Trustee of the Bankruptcy Estate ("the Trustee").

BACKGROUND AND FINDINGS

1. Beginning in the late 1970's, the debtor, Fred F. Somma, M.D., began receiving money by alleged loans from the "Fred F. Somma and Associates, Inc. Amended

and Restated Pension Trust" ("the Pension Plan") and the Fred F. Somma & Assoc. Inc. Profit Sharing Plan" ("the Profit Sharing Plan"). Both of these plans were maintained by Fred F. Somma & Assoc., Inc. ("the Company"). Debtor was the sole stockholder of the Company, one of the participants in both plans, and the Trustee of both of the plans.

2. Debtor never repaid any interest or principal on these alleged loans, nor did the plans, which were administered by Thompson Plan Administration Company, ever institute an action to recover the money.

3. In 1984, the I.R.S. audited the Pension Plan. The I.R.S. determined that the money which was allegedly loaned should be treated as distributions to debtor. As a result of this audit, the debtor was required to amend his 1981 and 1982 individual income tax returns to include $122,000 in income for 1981 and $10,000 in income for 1982.

4. In 1985, the I.R.S. further audited the Pension Plan and the Profit Sharing Plan and required debtor to further amend his 1981 and 1982 individual income tax returns to include $43,852.44 in income for 1981 and $97,000 in income for 1982. Since the I.R.S. audits only went back to 1981, they did not include ten alleged loans which occurred between 1978 and 1980 by which the debtor received a total of $183,000 from the Pension Plan, evidenced by notes, as follows: (Note, $13,000, dated October 10, 1978; Note, $5,000, dated November 11, 1978; Note, $60,000, dated January 18, 1980; Note, $45,000, dated July 7, 1980; Note, $5,000, dated August 9, 1980; Note, $6,000, dated August 18, 1980; Note, $10,000, dated September 18, 1980; Note, $6,000, dated November 10, 1980; Note, $9,000, dated November 25, 1980; and Note, $24,000, dated November 28, 1980).

5. On May 31, 1985, debtor filed a petition in bankruptcy with this court (Case No. 585–648). Neither the debts involving the Pension Plan, nor debtor's interest in the Pension Plan, were included in debtor's schedules.

6. On November 7, 1985, the U.S. Bankruptcy Court entered an order discharging debtor. There were no objections to debtor's discharge, nor have there been any actions to determine the dischargeability of the debts represented by the ten notes.

7. During 1986 the Pension Plan was terminated and its assets were transferred into the Profit Sharing Plan. The ten notes were never repaid and remained on the books of the Profit Sharing Plan. The first of the notes became payable in 1986, and the last of the notes became payable in 1988. The $183,000 was never included in debtors' gross income. The Company continues to carry the notes as "loans" on its books and records, along with the debtor's vested interest in the plans.

8. On April 20, 1990, debtor and his non-debtor spouse filed this adversary proceeding requesting that the court render a declaratory judgment determining the amount of pre-petition taxes, penalties and interest, and requiring the Trustee to pay those sums to the I.R.S.

9. On December 14, 1990, the I.R.S. sent an examination report ("the report") to the debtor. The report proposed the assessment of a total of $150,875 in taxes and penalties, beginning in 1986 through 1989, against debtor on the money evidenced by the ten notes, as constituting prohibited transactions pursuant to Title 26 U.S.C. § 4975(c). (See Docket No. 49.) No notice of deficiency under Title 26 U.S.C. § 6212 has been mailed with respect to these taxes and penalties, and no assessment has been made. The report is a "proposed adjustment" not a final determination of the IRS. The IRS has not filed a proof of claim or request for payment for these taxes and penalties.

10. On February 14, 1991, debtor filed a protest letter with the I.R.S. in response to the report. The debtor took this administrative action under the Internal Revenue Code in order to protest the proposed adjustment to his taxes. (See Transcript of Proceedings filed August 8, 1991, Docket No. 51.)

11. On March 1, 1991, plaintiffs filed their Second Amended and Supplemental Complaint including an additional fifth

count concerning the taxes and penalties assessed on the money evidenced by the ten notes. In that count, the plaintiffs request that this court render a declaratory judgment determining whether their liability for the post-petition taxes and penalties is barred by debtor's discharge; whether the assessment is barred by the doctrines of estoppel and/or waiver; and whether the taxes and penalties should be collected, if at all, from the estate rather than from the debtor. (*See* Count Five of the Second Amended and Supplemental Complaint and Exhibit "H" attached to the complaint.)

12. On July 15, 1991, the debtor and the United States of America appeared in a trial before this court and settled the first four counts of the complaint in a Joint Stipulation of Facts filed July 15, 1991. Among other things, the parties stipulated that debtor owed $1,620.36 as a pre-petition claim based upon an assessment pursuant to Title 26 U.S.C. § 6672 in connection with the Company and that debtor owed $1,037.99 arising from the pre-petition interest on his 1982 personal federal income tax liability. However, the IRS moved to dismiss the plaintiffs' fifth count, arguing that this court lacked jurisdiction over the matters involved in that count. The court took the motion under advisement.

13. On October 24, 1991, based on the July 15, 1991 Joint Stipulation of Facts, this court ordered that the trustee pay the IRS $1,620.36 constituting the assessment in connection with the Company and $1,037.99 constituting the pre-petition interest accrued on the debtor's 1982 personal federal income tax liability.

14. The following proofs of claim have been filed either by, or on behalf of, the IRS: On August 28, 1985, the IRS filed a proof of claim in the amount of $29,349.69 in respect to the debtor's 1981 federal income year; on November 8, 1985, the debtor filed a proof of claim on behalf of the IRS in the amount of $106,000 in respect to the debtor's 1981 and 1982 federal income tax years; on August 20, 1986, the debtor filed a proof of claim on behalf of the IRS for an "unknown" amount for taxes which are owed by Fred F. Somma & Assoc., Inc.;

and on August 27, 1990, the IRS filed a proof of claim in the amount of $34,749.01 in respect to the debtor's 1982 federal income tax year and an assessment made under 26 U.S.C. § 6672 in connection with Fred F. Somma & Associates, Inc.

15. On May 31, 1985, there was a deficiency in tax due in respect to the debtor's 1982 federal income tax year in the amount of $17,919.00, plus interest in the amount of $8,085.42. The following payments or credits were made towards the debtor's 1982 federal income tax liability since May 31, 1985: $2,842.51 on April 15, 1987; $262.26 on July 3, 1989; $200 on July 23, 1989; and $21,661.66 on July 5, 1990. As of July 15, 1991, the balance due on the Internal Revenue Service's claim against the debtor's estate for 1982 federal income taxes is $0.00 for taxes and $1,037.99 for pre-petition interest.

## ISSUES

Does this court have jurisdiction over the fifth count of the plaintiffs' complaint? Were the ten notes discharged on November 7, 1985 when the court entered debtor's discharge?

## CONCLUSIONS OF LAW

As a result of the parties' Joint Stipulation of Facts and this court's order of October 24, 1991 settling the first four counts of the complaint, the only issues remaining for this court are found in the fifth count.

The IRS argues that the alleged loans were prohibited transactions and fall within the purview of Title 26 U.S.C. § 4975 and that debtor is liable pursuant to Title U.S.C. § 6651(a) for failure to file a Form 5330 Return of Excise Taxes Related to Employee Benefit Plans. The plaintiffs argue that the ten notes represented bona fide "loans" which were discharged in bankruptcy on November 7, 1985 and that the IRS is thus prohibited from imposing taxes and penalties based upon discharged debts. The IRS argues that this matter involves taxes and penalties which arose "post-petition" thus depriving this court of jurisdiction. The IRS further argues that the ten alleged loans were in fact never

discharged because debtor failed to list them in his schedules.

■ The linchpin of both the plaintiffs' and the IRS's arguments is the dischargeability of these ten alleged loans. The court clearly has jurisdiction over matters of dischargeability pursuant to Title 28 U.S.C. § 157(b)(2)(I). Pursuant to Title 11 U.S.C. § 523(a)(3)(A), a debt is discharged unless it was not listed or scheduled and the creditor has had no notice or actual knowledge of the case in order to file a timely proof of claim. Debtor failed to include these ten alleged loans in his schedules; however, it cannot be said that the IRS had no notice of the bankruptcy. The IRS has had both actual and constructive notice of the bankruptcy. The IRS has filed, or has had filed on its behalf, at least four proofs of claim in this case. (Finding No. 14) The IRS had knowledge of the plans, has conducted audits of the plans, has assessed deficiencies in the plans going back to 1981 and has required debtor to amend his income tax returns to reflect the same. (Findings Nos. 3, 4 and 15) Considering the IRS's knowledge of both this bankruptcy and the debtor's other deficiencies relating to the plans, this court concludes that the IRS was put on notice that there may have been further deficiencies related to the plans. However, the IRS apparently waited until 1990 to conduct a further audit of the plans (going back to 1978), and has not claimed an inability to discover the alleged taxes at an earlier date. The IRS has never filed a proof of claim in this case with regard to this alleged excise tax, nor has it filed a nondischargeability complaint in these proceedings. (Findings Nos. 6 and 9) The IRS has not alleged any fraud or false representations which would make these alleged loans nondischargeable pursuant to other provisions in Title 11 U.S.C. § 523. (*See* Title 11 U.S.C. § 523(a)(2)(A).) Nor was there anything in the testimony to suggest fraud or false representations. (*See* Transcript of Proceedings filed August 8, 1991, Docket No. 51.) Therefore, the court concludes that if these 10 alleged loans were in fact bona fide loans as the debtor contends, then they would have been discharged in debtor's bankruptcy proceedings provided that the debtor has complied with other relevant provisions of the Federal Bankruptcy Code.

However, the IRS also claims that the discharge is irrelevant and that the alleged excise tax did not accrue until debtor failed to repay the notes when they became due starting in 1986, thus making the excise tax post-petition and outside of this court's jurisdiction.

■ After a careful consideration of the matter, the court concludes that the pivotal issue in this case, determinable with reference to Title 26 U.S.C. § 4975, is whether or not the ten transactions were in fact "loans" as the debtor claims or whether they were actually a distribution to a "disqualified person." If they were distributions to a "disqualified person", they should have been reported as income and were taxable at the time of withdrawal. However, this is a tax question which was set forth in the IRS's examination report. (*See* Plaintiff's Exhibit A.) On February 14, 1991, the debtor protested the proposed assessment. (*See* Plaintiff's Exhibit E.) Therefore, there is currently a factual determination to be made as to whether or not these ten transactions were actually loans or whether they were in fact distributions to income. It is apparent to this court that this a tax question which should be decided through the IRS's administrative procedures and/or the United States Tax Courts which have the expertise to decide these matters.

Therefore, for these reasons, the court sustains the IRS's motion that this court does not have jurisdiction to make a determination pursuant to Title 26 U.S.C. § 4975. However, this court retains the jurisdiction to determine the dischargeability of any tax debts of debtor resulting from the tax court's determination in this matter.